[Appeal of Philip Miller, Executor of Eve Achey, deceased, *et al.*]

and, as to the land, it was held to pass an estate tail to the first taker.

The subsequent clause in regard to renting or selling the land can have no effect on the construction of the will, so far, at least, as the present question is concerned. All the questions arising in the case are so well discussed, and the authorities so fully cited in the opinion of the learned judge of the Common Pleas, that it is unnecessary to add anything to what is there so well said.

Judgment affirmed.

May Term, 1881, No. 186.            June 17th, 1881.

## Appeal of Philip Miller, Executor of the Last Will and Testament of Eve Achey, dec'd, *et al.*

1. Certain officers, directors, and other stockholders of an insurance company subscribed for a quantity of the stock, giving their notes to the company for fifty per cent. of the subscription price, with the understanding that they were not to be called upon to pay these notes, which were given as a loan to enable the company to undergo the inspection by the insurance commissioner, and were to be surrendered to the makers when the emergency was over. The notes were deposited in bank, subject to the order of the board of directors. An official statement was published, including these notes among the assets of the company. A dividend was declared in which this stock participated. Subsequently, in pursuance of a resolution of the board of directors, the certificates for this stock were transferred to the company, and the notes were cancelled and returned to the makers. The company having become embarrassed, and judgments having been obtained against it, went into the hands of a receiver, who filed a bill in equity against these stockholders designated as "note stockholders," and the other stockholders of the company, who having paid up fifty per cent. of their subscriptions were designated as "cash stockholders," to compel such an assessment upon the unpaid instalments of the stock as was necessary to meet the liabilities of the company. *Held,* that though the transaction was intended for the benefit of the company, and was done in entire good faith, the "note stockholders" were primarily liable until they had paid an amount equal to that paid by the "cash stockholders," and afterward both classes were liable *pro rata.*

2. The transaction was a fraud upon creditors.

3. The "note stockholders" had no such equity as entitled them to throw the burden of the call upon the shoulders of the "cash stockholders" without the consent of the latter.

4. While the action of the board of directors in the line of their duty, and to the extent of their power, binds the corporation, the stockholders are not affected with notice of acts of commission or omission which are *ultra vires.*

Appeal of Philip Miller, executor of the last will and testament of Eve Achey, deceased; J. A. Beeber, George Babb, E. B. Campbell, Thomas Dougherty, Jacob P. Finley, First National Bank of Williamsport, Gottlieb Fulmer, John

Gibson, Robert R. Gibson, William H. Gibson, J. Walker Hays, for the firm of Hays & Phillips, Frederick H. Keller, Frederick Mankey, D. R. Mahaffey, Philip Miller, Jacob L. Mussina, Joseph W. Mussina, John F. Nice, John W. Richardson, Charles A. Rubright, Aaron G. Shiffler, George Slate, William H. Sloan, B. H. Taylor, B. S. Bentley, assignee of H. E. Taylor, Garrett Tinsman, Daniel Updegraff, William Weaver, William R. Young, Frederick Zimmerman, Mary H. Toner, John E. Jones, Samuel Jones, and Henry Ulman, from the decree of the Court of Common Pleas of Lycoming County, decreeing that certain stockholders, designated as " cash stockholders," of the Williamsport Fire Insurance Company, an insolvent corporation, are first liable, upon their subscriptions, to the extent of unpaid instalments due upon their stock, for the payment of the debts and liabilities of the company, before certain other stockholders, designated as " note stockholders," are liable for the unpaid subscriptions upon their note stock.

The Williamsport Fire Insurance Company was incorporated with a capital of $100,000, with the privilege of increasing it to $300,000, by an act of Assembly, approved March 12th, 1869, and, by the terms of the said act, was to be organized and managed, according to the provisions of the act, to provide for the incorporation of insurance companies, approved April 2d, 1856. The book for subscription to stock was opened April 22d, 1869, closed June 11th, 1869, and letters patent were issued to the corporation June 12th, 1869. Twelve directors were elected June 28th, 1869. All of the two thousand shares of stock were originally subscribed for, but some of the subscriptions being upon condition, were, after notice, forfeited by the board of directors. Upon the 8th of January, 1870, there were thirteen hundred and six shares of stock, upon which the first and second instalments, amounting to $25 per share, had been paid, called " cash stock," and six hundred and ninety-four shares which had been finally forfeited. At a meeting of the board of directors, January 10th, 1870, the secretary stated that an insurance commissioner had been appointed, who might at any time call for a statement that would be detrimental to the company in consequence of the non-payment of so many subscriptions, that the company was prosperous and making money, that a large number of risks and policies had been taken, and that unless something was at once done to meet the emergency the company might be compelled to wind up disastrously. He proposed, therefore, that the directors should subscribe for the forfeited stock so as to make up the deficiency, and give their notes for it. This was objected.

[Appeal of Philip Miller, Executor of Eve Achey, deceased, *et al.*]

to by the directors present on the ground that they had all the stock they wanted. The secretary replied, and was supported by the vice-president therein, that this was merely a temporary arrangement for the purpose of carrying the company over the emergency, when the notes would be surrendered to the makers; that he thought there would be no difficulty in the meantime in placing the whole amount of the stock so subscribed, and that in any event they would never be called on to pay these notes, as they were merely given as a loan for the benefit of the whole company. At a later meeting it was agreed that the stock should be subscribed for as proposed and the notes given, and that these notes should not be used, but placed in the hands of the president, to be deposited by him in the West Branch Bank for safe keeping. The following subscription paper was executed:

"JANUARY 1st, 1870.

"*Subscribed to fill deficiency, as per resolution of the board:*

| "Gottfried Hess, | . | . | . | . | . 20 shares, | $1000 |
|---|---|---|---|---|---|---|
| White, Lentz & White, | . | . | . | . | 52 " | 2600 |
| C. E. Gibson, | . | . | . | . | 52 " | 2600 |
| John B. Hall, | . | . | . | . | 52 " | 2600 |
| Benjamin S. Bentley, | . | . | . | . | 52 " | 2600 |
| Charles Hebard, | . | . | . | . | 52 " | 2600 |
| James H. Perkins, | . | . | . | . | 26 " | 1300 |
| John White, | . | . | . | . | 26 " | 1300 |
| Benjamin W. Thompson, | . | . | . | 52 " | 2600 |
| Holden, Lentz & Sallade, | . | . | . | 52 " | 2600 |
| John B. Beck, | . | . | . | . | 52 " | 2600 |
| M. Eder, | . | . | . | . | 52 " | 2600 |
| Ayres & Lundy, | . | . | . | . | 52 " | 2600 |
| A. Updegraff, | . | . | . | . | 52 " | 2600 |
| Philip Miller, | . | . | . | . | 20 " | 1000." |

This made a total of six hundred and sixty-four shares subscribed for out of the six hundred and ninety-four forfeited shares.

At the same meeting, "on motion, it was resolved that the notes in the hands of the treasurer, taken on account of stock subscriptions, be given into the custody of John White, president, who shall make a special deposit of them in the West Branch Bank, subject only to the order of the board of directors."

Notes amounting in all to $16,100, were given in the following form, *mutatis mutandis:*

[STAMP.]          "WILLIAMSPORT, PA., January 1st, 1870.

"On demand, I promise to pay to the Williamsport Fire Insurance Company $1300, for value received.

"JOHN B. HALL."

These subscribers, with some changes caused by transfers, constituted what are designated as the "note stockholders." A statement was then prepared by the secretary and treasurer, and published in a daily paper of Williamsport, showing the liabilities and assets of the company, and including among the assets "bills receivable, being loans on stocks collateral, $16,900," which item was partly made up of the said notes. On the 2d of July, 1870, the board of directors declared a semi-annual dividend upon the whole amount of the capital stock of 7 per cent., to be credited or paid in stock to the stockholders; provided, that in all cases where the company held the obligations of stockholders, interest upon said obligations at the rate of 6 per cent. per annum be deducted from the dividend going to such stockholders.

At a meeting of the board of directors, May 3d, 1873, it was resolved:

" That within ten days the makers of the notes given for stock, and now in the hands of the president of the company, be called upon to pay up said notes, with interest from their date, or at their option to return to the company the certificates of stock issued to them for said notes, with their indorsement of transfer to the company; then their said notes shall be cancelled and returned to them by the treasurer of the company."

On motion it was ordered that the notes given for stock be withdrawn from the West Branch Bank, and placed in the hands of the treasurer for compliance with the above action of the board.

In pursuance of this resolution the notes referred to were withdrawn from the bank and placed in the hands of the treasurer, by whom they were cancelled and returned to the makers between May 3d and June 10th, 1873, on the transfer by them to the company of the certificates of stock supposed to have been issued to them for the notes. It appeared that none of the certificates had actually been taken by the makers of the notes so returned.

The report of the secretary at the meeting of August 2d, 1873, showed an impairment of the capital stock to the extent of over $22 per share by reason of recent severe losses. On the 30th of August, of the same year, it was determined to write no more policies and assume no more risks. Soon after creditors brought suits against the company, and recovered judgments, and on the 18th of March, 1878, the Court decreed a dissolution of the corporation and a distribution of its effects, and the same day appointed a receiver. At this time there were assets remaining amounting to

$1877.40, and unpaid judgments and bills amounting to $9012.63.

The receiver filed a bill against both classes of stockholders, asking the Court to make a decree specifying whether the cash stockholders were alone liable for such proportion of the balance of the instalments due upon the stock held by them, as might be necessary to pay off the debts and liabilities of the company, or whether the note stockholders were first liable for $25 per share upon all note stock held by them, and asking further that an assessment be decreed.

Answers were filed and a master appointed.

The master found the facts to be as above set forth, and that the cash stockholders are first liable upon their subscriptions to the extent of the unpaid instalments due upon their stock for the payment of the debts and liabilities of the company, including the costs and expenses in the case.

Counsel for certain of the cash stockholders filed exceptions, *inter alia*, as to the finding of the master that the cash stockholders were primarily liable in this case to the extent of the unpaid subscriptions.

The Court below, CUMMIN, P. J., dismissed the exceptions, confirmed the report of the master, and decreed:

That the defendants designated in the bill of the plaintiff cash stockholders, were first liable upon their subscriptions to the extent of the unpaid instalments due upon their stock for the payment of the debts and liabilities of the company, including the costs and expenses incurred, together with such further sum as might be necessary to compensate the receiver and his counsel and the master for their services, and in case the unpaid instalments due by the said cash stockholders, or the proportion thereof that the receiver might be able to collect, should prove insufficient to pay the debts and liabilities, with the costs, expenses, and compensation, that then, and in that event, the defendants, designated in said bill note stockholders, were liable to the extent of their unpaid subscriptions upon their note stock for the payment of the balance of the said debts and liabilities, costs, expenses, and compensation then remaining unpaid.

And it was further ordered, adjudged and decreed that an assessment of 18 per cent. upon the par value of the stock held by them, to wit, the sum of $9 per share, be levied on each and every one of the said cash stockholders, defendants, except as therein named.

Certain of the cash stockholders appealed from this decree, assigning as error, *inter alia*, the refusal of the Court below to sustain the exceptions to the report of the master, and the making of the above order.

[Appeal of Philip Miller, Executor of Eve Achey, deceased, *et al.*]

*Samuel Linn, J. A. Beeber, F. P. Guise* and *H. C. Mc-Cormick*, for the appellants.

The learned master and the Court below were undoubtedly right in characterizing the conduct of those of the defendants denominated note stockholders as "a fraud upon the public," and that "they are clearly estopped as to creditors from denying their liability on their subscriptions." If estopped as creditors, we fail to see upon what principle they are relieved from liability in a proceeding in equity instituted by the receiver as the representative of the creditors, and where the decree prayed for is exclusively for the benefit of the creditors.

If some of the stockholders have paid for their stock, and others have secured the amount of their stock by stock notes, those who have paid have a right to insist that the receiver shall collect the unpaid stock notes, or so much thereof as is necessary to equalize the losses of all the stockholders ratably: 3 Edw. Ch., 215; Nathan *v.* Whitlock, 9 Paige, 152; Bedford Railway Company *v.* Bowser, 12 Wr., 29; Mann *v.* Pentz, 2 Sandford Ch., 286; Turnpike Company *v.* McConaby, 16 S. & R., 140.

The allegations of the note stockholders were that they only pretended to subscribe, when they wrote their contract of subscription for the stock absolute on its face, at the request of the secretary, to help the company through an emergency. A party sued for a subscription cannot set up that it was feigned and fraudulent: Graff *v.* Railroad Company, 7 Casey, 489; Caley *v.* Railroad Company, 30 P. F. Smith, 368; Railroad Company *v.* Bailey, 24 Vermont, 465; Miller *v.* Railroad Company, 6 Norris, 95; Robinson *v.* Railroad Company, 8 Casey, 325.

Nor is it any defence to prove that the subscription was made at the request of the president of the company with the understanding that it was to be cancelled: Custar *v.* Gas Company, 13 P. F. Smith, 381; Railroad Company *v.* Eastman, 34 N. H., 124; Nippenose Manufacturing Company *v.* Stadon, 18 P. F. Smith, 259; Mann *v.* Cooke, 20 Conn., 178.

The note stockholders having held out to the world, creditors, and other stockholders, that their subscriptions were *bona fide*, are now estopped from denying their liability: 1 Greenleaf, sec. 207; Graff *v.* Railroad Company, 7 Casey, 497; Bavington *v.* Railroad Company, 10 Casey, 358; Smith's Leading Cases, vol. 2, pp. 705, etc.

*R. P. Allen* and *W. D. Crocker* for the receiver.

*H. C. Parsons* and *W. H. Armstrong* for the "note subscribers," appellees.

[Appeal of Philip Miller, Executor of Eve Achey, deceased, *et al.*]

The whole argument of the appellants is built upon the assumption that the subscription was absolute, and that the notes were also absolute, and were the property of the company, and that the surrender of them to the makers was an abstraction of the assets. Nothing can be farther from the truth. The whole arrangement was for a temporary purpose, supposed to be important, and intended for the benefit of the company. All parties disclaim any imputation of fraud in the transaction. Nor can it be shown that the transaction has in any degree injured the company or any stockholder.

The opinion of the Court was delivered by PAXSON, J.

It is not denied that both classes of stockholders of the Williamsport Fire Insurance Company are liable to creditors of said company. The contention is whether the "cash stockholders," or the "note stockholders," as they are called for convenience, are primarily liable. The company was organized in 1869, with an authorized capital of $100,000, divided into two thousand shares, of $50 each. Of these shares, thirteen hundred and six appear to have been subscribed for, $25 per share paid thereon, and the company commenced business. In the month of January, 1870, the remaining six hundred and ninety-four shares were subscribed for by the officers and directors of the company, who respectively gave their notes for $25 per share. These notes were, by special order of the board, handed to the president of the company, and by him deposited specially in the West Branch Bank, where they remained until some time in 1873, when, in pursuance of a resolution of the board, all of said notes were returned to the parties, and the stock retransferred to the company.

At this time the latter had become insolvent. This stock is what has been referred to as the note stock.

The above arrangement was altogether a peculiar one. Its avowed object was to enable the company to undergo an inspection by the insurance commissioner. Its practical effect was to create the impression that the stock was all sold, and 50 per cent. paid up thereon. The notes referred to appear as a part of the assets of the company in its published statements. That the transaction was a fraud upon creditors was conceded; indeed, it is too plain a proposition to dignify by an argument or the citation of authority. It was contended, however, that it was good between the "note stockholders" and the company; that, as it was intended for the benefit of the latter, and was done in entire good faith, the company cannot question it after having returned the subscribers their notes and accepted from them a surrender of the

[Appeal of Philip Miller, Executor of Eve Achey, deceased, *et al.*]

stock. Conceding all that can be legitimately urged in support of this proposition, it fails to meet the requirements of the case. It is the creditors of the company who are now demanding that the note stockholders shall make good their subscriptions. Have the latter any such equity as entitles them to throw the burden of this call upon the shoulders of the cash stockholders? It may be if the cash stockholders had assented to the arrangement made by the note stockholders, as between themselves, they might have been bound by it. But no such assent appears upon this record, nor does the master find they had knowledge of it. The facts, from which he impliedly infers such notice, are too weak and inconclusive to affect the cash stockholders. It is true the matter appears upon the minutes of the board, but there is nothing to show that the stockholders ever saw them. This is a matter between the officers and directors and a portion of the stockholders. While the action of the former, in the line of their duty and to the extent of their power, binds the corporation, the stockholders are not affected with notice of acts of commission or omission of the board of directors which are *ultra vires*. This transaction, briefly stated, was an appropriation by the officers and directors of the six hundred and ninety-four shares of stock to themselves. If the company proved successful they would have the benefit of any advance in the market value of the stock, and could draw the dividends. If, on the other hand, disaster overtook it, they could return the stock, and get back their notes. This is just what was done here.

Whatever may have been the motive, it is too plain for argument that this fast and loose arrangement gave the note stockholders an unfair advantage over the cash stockholders. And we cannot say that it worked no injury. The fact that the stock was apparently all sold may have induced persons to purchase stock in the market who would not otherwise have done so. Then again, the note stockholders participated in the dividend of July, 1870, and by that amount the cash stockholders were injured.

We are of opinion that both classes of stockholders are responsible to the creditors, and that neither has an equity to throw such burden upon the other. The cash stockholders having paid up $25 per share on their stock, the note stockholders are primarily liable until they have, respectively, paid up a like amount; after that, *pro rata.*

The other questions raised by the assignments of error were not pressed at the argument, and need not be discussed.

The decree is reversed, at the costs of the appellees, and it is ordered that the record be remitted for further proceedings.